# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### SOUTH BEND DIVISION

KASTURI HALDAR,

                Plaintiff,

v.

                                     Case No. 3:24-cv-00836-CCB-SJF

UNIVERSITY OF NOTRE DAME DU LAC,
SANTIAGO SCHNELL, AND CINDY
PARSEGHIAN,

                Defendants.

## PLAINTIFF KASTURI HALDAR'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF HER MOTION FOR RECONSIDERATION

Plaintiff Kasturi Haldar files this supplemental memorandum in support of her motion for reconsideration, DE 36, to provide new factual information related to Notre Dame's failure to provide the materials and support it told this Court it was providing to Dr. Haldar's former graduate student, ███████████████████, preventing Dr. Haldar and ███████████████ from publishing their work and preventing ███████████████ from receiving his Ph.D. this year as planned.

Dr. Haldar sought a temporary restraining order and preliminary injunction in October 2024 to prevent Notre Dame from closing her research laboratory, destroying her biological materials, and ending her career as a research scientist. In that motion she noted that the closure of her laboratory and destruction of materials would prevent her Ph.D. student from completing his experiments and graduating in spring of 2025 and would set his career back years. DE 5 at 24, DE 16-1 at 2-3. The Court denied that motion on November 6, 2024, DE 30, and Dr. Haldar moved for reconsideration on November 18, 2024. DE 36. In denying the temporary restraining order and preliminary injunction, the Court held that Notre Dame had

"taken steps to facilitate [Dr. Haldar's graduate student's] graduation in 2025." DE 30 at 29. One of the grounds on which Dr. Haldar moved for reconsideration was that this statement was incorrect: Notre Dame was planning to destroy all the mice that the graduate student, ███████ ███████ needs for his dissertation experiments. DE 36 at 15. After Dr. Haldar filed her motion for reconsideration, Notre Dame reversed course and told this Court that it has "has committed to providing [the graduate student] with sufficient funds to house the mice, sufficient numbers of NKH mice to complete his dissertation research, necessary equipment at the College's cost and funding to meet his own timeline of finishing experiments in February 2025." DE 46 at 11.[1] This statement has also proven to be inaccurate.

Notre Dame did not provide ███████████ with the NKH mice to complete his experiments in February and appears unable or unwilling to provide the necessary mice in the near future. In November 2024, ███████████ discussed his material needs with the ███████████ DE 49-1 ¶ 8. At that time, she conveyed to him that Notre Dame would be flexible because it was difficult to predict in advance everything he might need. Exhibit A, March 17, 2025 Affidavit of ███████████ ¶ 4. In December 2024, ████ ███████ met with his new advisor, ███████████████, and representatives of the breeding lab to discuss what mice he would need. *Id.* at ¶

---

[1] ███████████ also does some work on Kabuki mice, which were in a colony called "F colony." DE 49-1 ¶ 3. Since the filing of Plaintiff's motion to reconsider, Notre Dame has euthanized the entire F colony. Exhibit A at ¶ 7. While ███████████ did not anticipate needing to do any new experiments on the F colony in December when he was required to provide his material needs to Notre Dame, as his work has progressed he has learned there are journals to which he has submitted manuscripts about Kabuki syndrome may ask him to conduct addition experiments. *Id.* at ¶ 8. Notre Dame's decision to euthanize the mice before the motion for reconsideration could be heard has prevented ███████████ from completing all the work he should have been able to do for his Ph.D. and the publications he has in progress, reducing the likelihood of his studies being published.

5. In that meeting he told Notre Dame that he required 300 mice from the P colony to conduct his experiments. *Id*. In January 2025 ███████████ met with the ████████████ ████████ and again reiterated that he needed the 300 P colony mice; the director told him she would provide them. *Id.* at ¶ 9. To date, Notre Dame has provided him with 24 P colony mice. *Id.* at ¶ 12. In March 2025, Notre Dame informed ████████████ that it will euthanize the mice by June 30, 2025. *Id.* at ¶ 15. Given the rate at which Notre Dame is producing mice from the P colony, it seems impossible that it will provide him with the 300 mice he needs before it euthanizes the colony. *Id.*

In December 2024, ███████████ also told Notre Dame he might need mice from the CH colony. *Id.* at ¶ 6. In February 2025, ████████████ confirmed to ██ ████████ and the ████████████ that he would need 48 CH mice to complete his experiments. *Id.* at ¶ 10. The ██████████ then told ████████████ it had allowed all but two breeding pairs of the CH colony to die, and those mice are already past the optimal breeding age. *Id.* ████████████ reiterated his need for these mice, and ████████████ said she would consider whether to resume breeding of the mice. *Id.* at ¶ 11. In mid-March 2025, Notre Dame agreed to attempt to resume breeding on the CH mice. *Id.* at ¶ 13. It will take multiple months before this breeding results in any mice ████████████ can use for his experiments. *Id.* It seems impossible that Notre Dame will be able to provide him with 48 CH mice by June 30, 2025. *Id.* at ¶ 15.

████████████ cannot complete his Ph.D. and defend his dissertation by May 2025 as planned because he does not have the mice he needs for his experiments. *Id.* at ¶ 16. Even if Notre Dame were able to provide all the mice he needs before euthanizing them on June 30, 2025, ████████████ would not be able to conduct his experiments, analyze the

results, draft his dissertation, and have that dissertation approved before Notre Dame's next degree conferral date in August 2025. *Id.* at ¶ 18. If ███████████ receives enough mice in June 2025 to complete his experiments and therefore his Ph.D., he will not receive his degree until 2026.[2]

Dr. Haldar and ███████████ have publications planned and underway that are based on the planned experiments with the P and CH colony mice. Exhibit B, Affidavit of Kasturi Haldar ¶¶ 16-19. If ███████████ is unable to do all his planned experiments, he and Dr. Haldar may not be able to publish their work. Exhibit A ¶ 19; Exhibit B ¶ 22. Both ███████████ and Dr. Haldar's careers will be negatively impacted if they cannot publish their planned manuscripts. Exhibit A ¶ 20; Exhibit B ¶¶ 24-29. To secure grants and donations for research, Dr. Haldar must demonstrate a strong publication record. Exhibit B ¶ 26. If she wants to license her ideas or products to a commercial partner, her experiments must be published in a peer-reviewed publication. *Id.* ¶ 27. To be awarded patents she has filed or intends to file on the concepts explored in ███████████'s experiments, she must publish peer-reviewed articles about those experiments. *Id.* ¶ 28.

Notre Dame has not provided the material support for ███████████ work that it represented to ███████████ and this Court he would receive to mitigate the harm of the Haldar lab closure, which will also irreparably harm Dr. Haldar's career. This Court considered the mitigation of harm to innocent third parties relevant to its decision to deny the temporary restraining order and preliminary injunction. The fact that Notre Dame is depriving ███████████ of the materials he needs to complete his Ph.D. and publications counsels

---

[2] After August 3, 2025, the next degree conferral date at Notre Dame is in January 2026. *See* https://registrar.nd.edu/calendars/future-graduation-dates/ (last visited Mar. 26, 2025).

in favor of issuing the preliminary injunction to re-open Dr. Haldar's laboratory to allow her to supervise ██████████ through completion of his Ph.D. and ensure that the mice he is using are not euthanized before he has completed his work with them. This remedy is necessary to stem the irreparable harm Notre Dame is now inflicting on ██████████ and Dr. Haldar's scientific research and careers.

For the foregoing reasons, Plaintiff respectfully requests this court reconsider its denial of the temporary restraining order and preliminary injunction.

Dated: March 28, 2025

Respectfully submitted,

KASTURI HALDAR

By:    /s/      *Naomi R. Shatz*

Sandra L. Blevins, Atty. No. 19646-49
Courtney E. Endwright, Atty. No. 30557-49
BETZ + BLEVINS
One Indiana Square, Suite 1660
Indianapolis, Indiana 46204
Office: (317) 687-2222
Fax: (317) 687-2221
E-mail:    sblevins@betzadvocates.com
             cendwright@betzadvocates.com
             litigation@betzadvocates.com

Naomi R. Shatz*
Niamh Gibbons*
Zalkind Duncan & Bernstein LLP
65a Atlantic Avenue
Boston, MA 02110
(617) 742-6020
nshatz@zalkindlaw.com
ngibbons@zalkindlaw.com

*Admitted Pro Hac Vice*

5

**CERTIFICATE OF SERVICE**

I certify that on March 28, 2025 I electronically filed the foregoing document and that it is available for viewing and downloading from the Court's CM/ECF system, and that all participants in the case are registered CM/ECF users and that service will be accomplished by CM/ECF.

/s/    *Naomi R. Shatz*
Naomi R. Shatz