UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

KASTURI HALDAR,

        Plaintiff,

           v.                      CASE NO. 3:24-CV-836-CCB-SJF

UNIVERSITY OF NOTRE DAME DU
LAC, et al.,

        Defendants.

## OPINION and ORDER

On April 11, 2025, Plaintiff Kasturi Haldar filed her Motion for Interpretation of Protective Order, to Redesignate Documents, and to File Public Versions of Sealed Documents [DE 76]. On that same date, Plaintiff filed the Affidavit of Naomi R. Shatz [DE 76-1], her counsel, and a memorandum in support of her motion [DE 77]. On April 25, 2025, Defendants timely filed their Response. [DE 82]. Defendants also filed two exhibits and an appendix in support of their Response. [DEs 81, 81-1, 81-2]. The exhibits are comprised of filings and unpublished opinions from two proceedings in the Northern District of Illinois that Defendants cite to in their Response. [DEs 81-1, 81-2]. Plaintiff's motion became ripe for ruling on May 2, 2025, when Plaintiff timely filed her Reply. [DE 83].

## I.    RELEVANT BACKGROUND

Plaintiff brings her case against Defendants under Title VII based on alleged discrimination on the basis of race, national origin, gender, and age[1]. Plaintiff is a tenured professor in the Department of Biological Sciences, College of Science, at Defendant University of Notre Dame, a post she has held since 2008. Due to the imposition of certain restrictions over a course of years arguably resulting from Plaintiff's alleged treatment of colleagues and subordinates, the determination was made to ultimately close Plaintiff's lab and to increase her teaching responsibilities sometime around December 12, 2024. Plaintiff argues that the treatment she received was discriminatory.

Some portions of the evidence that Plaintiff has brought in support of her claims has been filed under seal by the parties pursuant to the confidentiality designations applied to these documents, namely through the amended stipulated Protective Order entered by the Court on December 2, 2024[2]. [DE 47]. Earlier, the Court had initially denied the parties' initial Stipulated Protective Order without prejudice, on November

---

[1] The Court relies on the facts recited in detail in its November 5, 2024, Opinion and Order. [DE 30]. The Court's earlier Opinion and Order summarized the facts presented in Plaintiff's Verified Complaint [DE 1], Plaintiff's affidavit [DE 4-13], Plaintiff's supplemental affidavit [DE 22-1], "Defendant Santiago Schnell's affidavit [DE 18-3], other affidavits and exhibits attached to the Verified Complaint, and the briefing of the pending Motion for Temporary Restraining Order and Preliminary Injunction." [DE 30 at 1].

[2] As Plaintiff notes, she and counsel had not objected to the Court with regards to Defendants' filing certain documents under seal prior to bringing her instant motion. [DE 76-1 at 1-4, ¶¶ 4-15]. However, it appears that Plaintiff's acquiescence was done with the intent to move this case along, especially when her motion for a preliminary injunction was pending. [DE 76 at 1, ¶ 4; 2-3, ¶¶ 8-12; 3-4, ¶¶ 13-15]. Once the Protective Order was in place, Plaintiff made her disagreements known about the scope of confidentiality that attached to these documents by virtue of the Protective Order. [*Id.*].

5, 2024, because the scope of information the parties sought to be protected was overbroad. [DE 31]. The parties resubmitted a motion for Protective Order in compliance with the Court's standards on November 15, 2024, which was subsequently granted by the Court on December 2, 2024. [DE 47]. On April 11, 2025, Plaintiff moved this Court to clarify the scope of the Protective Order in order to redesignate documents that were previously designated as "confidential" so that those documents could be unsealed.[3] [DE 76 at 1].

Plaintiff seeks clarification of the meaning of two provisions of the Protective Order: II(A)(3) and II(A)(5). [DE 77 at 3]. Plaintiff argues that certain documents, listed below, fall outside of the scope of what Plaintiff argues are two applicable provisions in the Protective Order: II(A)(3) and II(A)(5). [DE 77 at 3]. Plaintiff argues that the following documents should be unsealed:

1. Documents related to Plaintiff's 2022 faculty grievance:

    a. Plaintiff's December 20, 2022, grievance submitted to the Faculty Grievance Committee [DE 4-3];

    b. The March 15, 2023, faculty grievance panel report [DE 25-2];

    c. The University Provost's March 24, 2023, response letter to Plaintiff regarding the outcome of Plaintiff's 2022 faculty grievance [DE 4-4]; and

---

[3] The parties failed to reach an agreement as to which documents should remain under seal after multiple attempts to do so. [DE 76 at 2-4].

d.  The 2022 faculty grievance panel's recommendations provided to Plaintiff, sometime after the University Provost's March 24, 2023, response letter [DE 4-5].

2.  Documents related to Plaintiff's 2024 faculty grievance:

a.  Plaintiff's October 10, 2024, grievance submitted to the Faculty Grievance Committee [DE 4-11];

b.  The January 31, 2025, faculty grievance panel's report [DE 56-1];

c.  The January 31, 2025, faculty grievance panel's recommendations provided to Plaintiff [DE 56-2]; and

d.  The University President's February 17, 2025, letter to Plaintiff regarding the outcome of Plaintiff's October 10, 2024, faculty grievance [DE 56-3].

3.  The 2022 investigation report from the University's Office of Institutional Equity ("OIE") related to its investigation of complaints that the University received from staff and students about Plaintiff ("OIE investigation report") [DE 25-1].

4.  A 2024 application for a SAM.gov account [DE 25-3].

Plaintiff also argues that certain documents related to her personnel or employment records [DEs 72-3, 72-4], the surrebuttal in support of Plaintiff's November 18, 2024, motion for reconsideration [DE 71] and affidavit she provided in support of her surrebuttal [DE 72-1], should be unsealed. These two additional documents that

Plaintiff seeks to unseal are: a November 14, 2024,[4] email Plaintiff sent in response to two of three questions presented to her by a member of the faculty grievance panel, which included names of people employed by her lab [DE 72-3]; and a November 20, 2024, email responding to the third question, which sought the contact information of any third parties she had spoken with regarding her grievance [DE 72-4].

In addition to arguing that provisions II(A)(3) and II(A)(5) warrant that these documents be maintained under seal, Defendants also argue that paragraphs II(A)(6) and II(A)(7), as well as language contained in the Academic Articles of the University, require the parties to maintain these documents in confidence.

As previously noted, the Court has previously ordered that some documents be filed under seal. First, during the October 28, 2024, hearing on Plaintiff's emergency motion for the entry of a temporary restraining order, the Court ordered Defendants to file the full 2022 OIE investigation report, the full 2023 facility grievance panel report, and the SAM.gov application under seal.[5] [DE 24]. That same day, prior to the protective order being entered in this case, Defendants complied with the Court's text order and filed the materials under seal. [DE 25]. Defendants were also granted leave to file a sur-reply to Plaintiff's emergency motion for reconsideration under seal on March 26, 2025. [DE 63]. The Court's grant applies to the documents Defendants also filed

---

[4] Plaintiff's affidavit provided in support of her surrebuttal states that the email is from November 15, 2024. [DE 72]. However, the date on the upper left-hand corner of the email is November 14th. The Court will refer to the earlier date in this order.

[5] Specifically, the Court ordered the following: "Plaintiff ORDERED to file the Right to Sue Letter and Defendant is ORDERED to file the full OEI Report, full Facility Grievance Report (sealed), and Sam.gov application (sealed) by 5:00 p.m. EST on 10/28/2024." [DE 24].

under seal in support of their sur-reply, [DEs 56-1, 56-2, 56-3]. Plaintiff seeks to have those documents unsealed, specifically: the January 31, 2025, faculty grievance panel's report [DE 56-1]; the January 31, 2025, faculty grievance panel's recommendations provided to Plaintiff [DE 56-2]; and the University President's February 17, 2025, letter to Plaintiff regarding the outcome of Plaintiff's 2024 faculty grievance [DE 56-3].

There are also certain documents that Plaintiff seeks to unseal that Plaintiff did not previously file under seal in this litigation. Specifically, Plaintiff did not file the following documents under seal when she filed her Emergency Motion for Temporary Restraining Order on October 11, 2024 [DE 4]: Plaintiff's December 20, 2022, grievance submitted to the Faculty Grievance Committee [DE 4-3]; The University Provost's 2023 letter to Plaintiff regarding the outcome of Plaintiff's 2022 faculty grievance [DE 4-4]; The 2022 faculty grievance panel's recommendations provided to Plaintiff [DE 4-5]; Plaintiff's October 10, 2024, grievance submitted to the Faculty Grievance Committee [DE 4-11]. Further, although Defendants argue that these documents should be designated as confidential under the protective order, Defendants have not requested that these specific documents be sealed, either in a separate motion or in their response. [DE 82 at 3 n. 2].

## II.    LEGAL STANDARD

Plaintiff's motion touches on the intersection between the scope of protective orders and on what sort of confidentiality justifications warrant maintaining portions of the record under seal. Bearing on both considerations is the federal court system's longstanding tradition of openness, which recognizes that "[j]udicial proceedings are

public rather than private property, and the third-party effects that justify the subsidy of the judicial system also justify making records and decisions as open as possible." *Foggia v. Universal Steel Am., Inc.*, Case No. 2:04cv122, 2005 WL 8170136, at *1 (N.D. Ind. Mar. 18, 2005) (quoting *Union Oil Company of California v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000)).  The Court addresses the legal standards that apply to these considerations in turn.

A joint protective order functions as a contract, and is therefore governed by rules of contract interpretation, typically by giving effect to the ordinary meaning of the language used. *See In re Sulfuric Acid Antitrust Litigation*, 235 F.R.D. at 418 (citing *Beanstalk Grp., Inc. v. AM Gen. Corp.*, 283 F.3d 856, 859 (7th Cir. 2002); *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 878 (7th Cir. 2005)). Here, because Plaintiff is bringing a Title VII action, federal courts are not required to apply state law in determining what a phrase means. *See Mem'l Hosp. for McHenry County v. Shadur,* 664 F.2d 1058, 1061 & n.3 (7th Cir. 1981). This holds true even if the plaintiff pleads, in addition to federal law claims, supplemental state law claims for which the information sought would also be relevant. *Id.* at 1061 n.3.

When determining the scope of a protective order, courts in this Circuit have historically looked at the order's "context, audience, and nature" to decide whether an interpretation is reasonable. *Grove Fresh Distribs., Inc. v. John Labatt Ltd.*, 888 F. Supp. 1427, 1438 (N.D. Ill. 1995). A joint protective order is often viewed as a contract between the parties; thus, contract interpretation is in accordance with the ordinary meaning of the language used in the protective order. *In re Sulfuric Acid Antitrust Litigation*, 235

F.R.D. 407, 418 (N.D. Ill. 2006) (citing *Beanstalk Grp., Inc. v. AM Gen. Corp.*, 283 F.3d 856, 859 (7th Cir. 2002)). Courts should not accept "twisted interpretations" or "tortured constructions" of an order, and an interpretation of an order should not render it null. *United States v. Greyhound Corp.*, 508 F.2d 529, 532-33 (7th Cir. 1974).

However, the broad secrecy that is justified at the discovery stage of litigation, especially where the litigants' privacy and property interests predominate, does not apply with the same force once those documents are used in support of a particular position in litigation. *Baxter Intern., Inc. v. Abbott Laboratories*, 297 F.3d 544, 545 (7th Cir. 2002) (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984)). Instead, those documents "that influence or underpin the judicial decision are open to public inspection unless they meet the definition of trade secrets or other categories of bona fide long-term confidentiality." *Id.* (citing *Grove Fresh Distributors, Inc. v. Everfresh Juice Co.*, 24 F.3d 893 (7th Cir. 1994); *In re Continental Illinois Securities Litigation*, 732 F.2d 1302 (7th Cir. 1984)).

Accordingly, a party seeking to maintain documents in the public record under seal must "justify the claim of secrecy." *Baxter Intern., Inc. v. Abbott Laboratories*, 297 F.3d 544, 546 (7th Cir. 2002). Specifically, they must contend that there are legitimate justifications for the documents to be kept under seal despite the importance of those documents to the resolution of the litigation. *Id.* at 546; *see also Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1266 (7th Cir. 1992).

## III.  DISCUSSION

To reiterate *supra*, the parties disagree whether he December 2, 2024, protective order [DE 47] justifies filing certain documents under seal in this case. The Court first

focuses its analysis on the provisions at issue and then turns to the documents that Plaintiff argues should be unsealed.

### A. Interpretation of Section II(A)(3) and Section II(A)(5)

The parties specifically disagree about the scope of confidentiality that attaches to documents designated as confidential under II(A)(3) and II(A)(5) of the Protective Order. Defendants argue that the language of these provisions functions to protect all the faculty grievance documents and the OIE report in this case. The protective order allows parties to designate certain information as confidential so long as it "was maintained as confidential and the party has a legitimate interest in maintaining its confidentiality." [DE 47 at 2].

Provision II(A)(3) states in its entirety that the following may be designated as confidential:

> Personnel or employment records of a person who is not a party to this case, concerning compensation, probationary reviews, investigative files, grievance files, peer review files, complaint files, internal investigations of complaints, academic appointment files, personnel files, and compensation information[.]

[DE 47 at 2].

Provision II(A)(5) further states that the following information may be designated as confidential:

> Records related to personnel, academic and administrative deliberations, peer review processes that are confidential under Notre Dame's Academic Articles, faculty grievance files, discipline files, and investigative files for investigations directed and maintained by the Provost's office, concerning the identity and personal information of any non-party complainant or alleged comparator, reviewer, or faculty committee member involved in such processes and all internal communications related thereto[.]

[*Id.*].

Plaintiff argues that certain documents[6] that Defendants have designated as confidential should not be, because they are not parts of personnel or employment records of non-parties but instead are part of Plaintiff's personnel record, if they are to be considered a part of any individual's record. [DE 77 at 4]. Plaintiff argues that the scope of the protective order does not warrant being kept under seal.

Specifically, Plaintiff's Memorandum in Support of Motion for Interpretation of Protective Order contends that Section II(A)(3) makes confidential only a list of files when they are part of a "personnel or employment record" of a non-party. [DE 77 at 4]. Thus, Section II(A)(3) does not apply to the above disputed documents. [DE 77 at 4-5]. Further, Plaintiff states that Section II(A)(5) applies only to portions of the records that concern the identity and personal information of certain people, not the entire records. [DE 77 at 6-7]. Lastly, Plaintiff argues documents related to the faculty grievance process do not require confidentiality designations. [DE 77 at 8]. There must be a legitimate interest to maintain its confidentiality in addition to fitting into an existing category in the protective order. [DE 77 at 8].

---

[6] Plaintiff lists the following specific documents as examples: the OIE investigation report [DE 25-1]; the March 15, 2023, faculty grievance panel report [DE 25-2]; a 2024 application for a SAM.gov account [DE 25-3]; the January 31, 2025, faculty grievance panel's report [DE 56-1]; the January 31, 2025, faculty grievance panel's recommendations provided to Plaintiff [DE 56-2]; the University President's February 17, 2025, letter to Plaintiff regarding the outcome of Plaintiff's 2024 faculty grievance [DE 56-3]; Plaintiff's November 15, 2024, submission to the grievance panel attached as an exhibit to her sealed Motion for Leave to File Sur-Reply [DE 72-3]; and her November 20, 2024, submission attached to the same motion [DE 72-4].

In their response, Defendants contend that Plaintiff interprets the two provisions above too narrowly. [DE 82 at 4]. Defendants allege that the language in Section II(A)(5) represents a baseline for confidentiality and does not limit protection only to the identity and personal information of certain people. [DE 82 at 4, 6]. In a similar vein, Defendants assert that under Section II(A)(3), the documents in question reflect personnel matters involving third parties who lodged complaints about Plaintiff. [DE 82 at 5]. Thus, these documents qualify as personnel records of non-parties that fall under this provision's protection. [DE 82 at 5].

Since the dispute is about a joint protective order, analysis begins by first looking at the ordinary meaning of the language in Sections II(A)(3) and II(A)(5). *See In re Sulfuric Acid Antitrust Litigation*, 235 F.R.D. at 418. Ordinary meaning is employing a "commonly understood definition" of words that is consistent with previous cases in the context of a protective order. *Id. at 419.* Further, the provisions must be interpreted without distortion that would render the protective order meaningless and must be examined in light of its "context, audience, and nature." *See Greyhound*, 508 F.2d at 532-33; *Grove Fresh Distribs.*, 888 F. Supp. at 1438 (holding that the defendant's interpretation of the protective order was unreasonable considering the history of his conduct such as past violations and warnings).

For Section II(A)(3), the ordinary meaning of "personnel or employment records of a person who is not a party to this case" creates a clear limitation of the Protective Order. [DE 47 at 2]. Under the commonly understood definition articulated in *In re Sulfuric Acid Antittrust Litigation*, the quoted phrase establishes both a subject matter

requirement of "personnel or employment records" and an ownership requirement of belonging to a non-party.

The disputed documents—Plaintiff's grievance submissions, grievance panel reports regarding her complaints, and the OIE investigation of complaints about her—primarily concern her employment situation and would logically be part of her personnel file, not those of non-parties. [DE 77 at 4-5]. While these documents may reference or discuss non-parties who made complaints or served on panels, this does not transform them into "personnel or employment records of" those non-parties. Defendants' broad interpretation would essentially allow any document that mentions a non-party to be deemed confidential, rendering the limiting language in Section II(A)(3) "concerning" meaningless. [DE 82 at 5]. The revised protective order's more restrictive use of "concerning" was intended to narrow the scope to specific enumerated categories within non-party personnel records, not to expand coverage to any document that might reference non-parties. [DE 47 at 2; DE 28-1 at 3]. Thus, considering the context and nature of the order, the narrow interpretation of Section II(A)(3) best reflects the parties' intention.

For Section II(A)(5), the parties disagreed on the scope of confidentiality surrounding "identity and personal information of any non-party." Plaintiff argues that this provision only makes confidential parts of the records that concern the identity of non-party individuals, not the entirety of the records. [DE 77 at 6]. Defendants assert that Section II(A)(5) does not limit protection only to personal information of non-party individuals, but to the entire documents. [DE 82 at 4].

Interpreting the protective order according to its ordinary meaning simplifies the litigation of contract disputes. *In re Sulfuric Acid Litigation*, 235 F.R.D. at 418. Accordingly, the Court begins with the ordinary meaning of the language of Section II(A)(5) to avoid "twisted interpretations" that would distort the Order's purpose. *Greyhound Corp.*, 508 F.2d at 532-33.

The Seventh Circuit has established the "last antecedent rule" for interpreting modifying phrases in legal documents. *See Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 468 (7th Cir. 2020). Under this rule, when a modifying phrase follows a list and is set off by a comma, the phrase modifies all of the preceding items in the list. *Id.* While *Gadelhak* involves statutory interpretation of the Telephone Consumer Protection Act, the Court applied this grammatical principle because it reflects the "most natural" reading based on "sentence construction and grammar." *Id.* at 464. This rule of interpretation provides objective guidance for resolving textual ambiguities in legal documents, including contracts. *See City of Fort Wayne v. Consol. Elec. Distributors, Inc.*, 998 N.E.2d 733, 737 (Ind. Ct. App. 2013) (applying the last antecedent rule to both contracts and statutes).

Under the "last antecedent rule," the comma placement before "concerning the identity and personal information of any non-party complainant or alleged comparator, reviewer, or faculty committee member" demonstrates that the quoted phrase applies to each of the antecedents listed before the comma. [DE 77 at 6-7]. Thus, Plaintiff's interpretation of Section II(A)(5) represents a natural reading of the provision. [DE 77 at 6-7].

To determine the scope of Section II(A)(5), the Court considers the context and nature of the modified protective order. *Grove Fresh Distribs.*, 888 F. Supp. at 1438. The Court rejected the original protective order as overbroad. [DE 31 at 5]. The original language of Section II(A)(5) stated that records were confidential "including the identity and personal information" of non-parties. [DE 28 at 3]. By changing "including" to "concerning," the parties demonstrate their intent to narrow the scope of protection to only those aspects of documents that actually concern non-party identifying information.

Defendants' interpretation would render the limiting language "concerning the identity and personal information" meaningless surplusage. If the parties intended to make entire categories of documents confidential, they would not have included this restrictive modifying phrase in the first place. Further, if mere mention of non-party information would render entire document confidential, it would be virtually impossible to publicly file any employment-related litigation materials. So, Defendants' overbroad reading of Section II(A)(5) is beyond the ordinary meaning of the provision. *In re Sulfuric Acid*, 235 F.R.D. at 418. This would constitute the type of "tortured construction" that courts should avoid. *Greyhound*, 508 F.2d at 532.

As a result, the narrow interpretation of Section II(A)(5) best reflects the "spirit and purpose" of the protective order. *Chase Indus.*, 806 F. Supp. at 1386. The Court's initial rejection of the original protective order was to protect legitimate confidentiality interests while limiting the scope of protected information. [DE 31 at 3-5]. Thus, interpreting Section II(A)(5) to protect only portions of documents that concern the

identity and personal information of non-parties serves the intended purpose of this order.

Defendants further argue that documents related to the faculty grievance process should be confidential in their entirety and are protected under Section II(A)(6) and (7) of the protective order and the Academic Articles of the University. [DE 82 at 5]. Those documents, including the OIE investigation report and the SAM.gov application, and Defendants' related arguments are addressed below.

B.      **2022 and 2024 Faculty Grievance Reports**

The parties disagree on whether documents related to the faculty grievance process should be confidential under the protective order. Defendants argue that since the faculty grievance process is a peer review process, it should be protected under the Academic Articles. [DE 82 at 7]. Dr. Haldar, on the other hand, holds that the confidentiality obligation is unilateral and only binds panel members, not grievants. [DE 83 at 2]. As Dr. Haldar notes in her reply, although the Academic Articles fall under the contract, it "does not impose on her any obligation to keep materials confidential." [DE 83 at 2].

The Seventh Circuit has long held that confidentiality is important to the proper functioning of  peer review process as it ensures candid and objective evaluations. *See EEOC v. Univ. of Notre Dame*, 715 F.2d 331, 336 (7th Cir. 1983), overruled in part by *Univ. of Pennsylvania v. EEOC*, 493 U.S. 182, 192-95 (1990) (holding that confidentiality in peer review process cannot be a basis to "withhold" documents). Courts in the Seventh Circuit have also stated that the finding of no privilege in peer review process from

*University of Pennsylvania* does not overcome the confidentiality concerns addressed in *University of Notre Dame*. *See Schneider v. Northwestern Univ.*, 151 F.R.D. 319, 323 (N.D. Ill. 1993); *Mattice v. Memorial Hosp. of South Bend*, 203 F.R.D. 381, 386-87 (N.D. IN. 2001) (holding that peer review privilege is not applicable to the case but certain patient information should be redacted due to privacy interests).

The University maintains the faculty grievance documents in confidence, and thus satisfies the threshold requirement of being "maintained as confidential" under Section II(A) of the protective order. [DE 82 at 5]. Since the faculty grievance documents are derived from a peer review process and may contain personal information, it is subjected to some degree of confidentiality. *See Univ. of Notre Dame*, 715 F.2d at 336; *Mattice v. Memorial Hosp. of South Bend*, 203 F.R.D. at 386-87. Unlike *University of Pennsylvania*, here the documents are not being withheld by another party on a confidentiality basis. The issue is whether or not these already-disclosed documents that relate to the faculty grievance process should be confidential.

Faculty grievance files are explicitly listed in Section II(A)(5). However, under the proper interpretation, only portions "concerning the identity and personal information of any non-party complainant" are confidential. Information of non-party complainants is similar to the patient information in peer review documents in *Mattice*. In *Mattice*, the Court held that the parties should redact or withhold certain information that is protected by the patients' privacy interests. *Mattice*, 203 F.R.D. at 386-87. Therefore, targeted redaction rather than a complete sealing of faculty grievance documents is appropriate given the privacy interests of non-party complainant.

Protected information would include: (1) names and identifying information of grievance panel members; (2) personal details about faculty committee members that could identify them; and (3) identity of witnesses or other non-party participants in the process. This redacted information would most likely appear in the faculty grievance panel's report [DE 25-2 and DE 56-1]; Plaintiff's November 2024, correspondence with a member of the faculty grievance panel [DE 72-3 and DE 72-4], and the panel's recommendations provided to Dr. Haldar [DE 4-5 and DE 56-2].

Publicly accessible information that does not pertain to personal information would include: (1) Dr. Haldar's grievance submissions and arguments [DE 4-3 and DE 4-11]; and (2) Notre Dame's findings and decisions regarding her grievances listed in the President's letter to Dr. Haldar [DE 4-4 and DE 56-3].

By redacting certain portions of the documents rather than sealing them entirely, this approach respects the privacy interests of non-parties and aligns with the purpose and spirit of the protective order. *See Mattice*, 203 F.R.D. at 386-76; *Grove Fresh Distribs.,* 888 F. Supp. at 1438. The redactions serve the protective order's legitimate protective function while avoiding the overbroad confidentiality that this Court initially rejected, consistent with the strong presumption of favoring public access to judicial proceedings. *See Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999) (concluding that public has a right to access judicial proceedings unless good cause overrides that right).

However, on account of the law of the case doctrine, as addressed *infra*, the Court declines to direct the parties to file redacted versions of the following documents: the

March 15, 2023, faculty grievance panel report [DE 25-2]; January 31, 2025, faculty grievance panel's report [DE 56-1]; the panel's recommendations that were provided to Plaintiff [DE 56-2]; and the University President's February 17, 2025, letter to Plaintiff regarding the outcome of Plaintiff's 2024 faculty grievance [DE 56-3].

C.    **OIE Investigation Report**

The OIE investigation report, similar to faculty grievance documents, likely has been "maintained as confidential" under Section II(A) of the protective order. [DE 47 at 2]. Internal investigation reports are normally treated as confidential unless sufficiently important interests outweigh the confidentiality interest. *See McClendon v. Illinois Department of Transportation*, 64 F.Supp.3d 1163, 1169 (N.D. Ill. 2014) (declining to keep an investigative file confidential to advance federally protected interest in non-discriminatory treatment).

However, satisfying the threshold requirement in Section II(A) does not mean that the OIE investigation report falls under the scope of confidentiality protection. As analyzed earlier in the interpretation of Section II(A)(3), the OIE investigation report falls primarily within Plaintiff's personnel file. While the report may contain some personnel information about non-party complainants who made complaints against Dr. Haldar, only those specific portions would be protected under Section II(A)(3) in light of privacy interests. *Mattice*, 203 F.R.D. at 386-87; *State Journal-Register*, 994 N.E.2d at 714. Plaintiff also failed to address any important interests that would overcome the confidentiality interest to completely disclose the OIE Report.

The OIE Report more clearly falls within Section II(A)(5) as an "investigative file" that concerns "the identity and personal information of any non-party complainant" who made complaints about Plaintiff. Under the proper interpretation of this provision, only those portions of the report "concerning the identity and personal information" of non-party complainants should be confidential, not the document in its entirety.

Defendants express concern that redacting only names would still allow the public to discern individuals' identity. [DE 82 at 6]. This concern can be addressed through a comprehensive redaction of all identifying information, including names, specific roles, detailed factual allegations, and any other details that could lead to identification of particular complainants. Accordingly, the OIE investigation report should be subjected to targeted redaction, instead of a complete sealing. Protected information to be redacted must include: (1) names and identifying information of non-party complainants; (2) personal details about complainants that lead to identification; and (3) direct quotes or specific factual allegations that reveal particular complainants' identities. *See State Journal-Register*, 994 N.E.2d at 714, 719 (redacting detailed information that would make the student identifiable such as their names and witness statements); *Univ. of Notre Dame*, 715 F.2d at 338 (redacting the name, address, and any other identifying information that may reveal the identity of a particular scholar in a peer review process). The remainder of the document should remain publicly accessible.

However, on account of the law of the case doctrine, as addressed *infra*, the Court declines to direct the parties to file a redacted version of the OIE Report [DE 25-1].

D.        **The SAM.gov Application**

Under Section II(A) of the protective order, any document designated as confidential must first satisfy the threshold requirement that it has been "maintained as confidential." [DE 47 at 2]. Further, Defendants bear the burden to establish good cause to seal the documents, which they have failed to meet regarding the SAM.gov application. [DE 83 at 3]. According to Dr. Haldar's brief, the SAM.gov document was created by an employee in Dr. Haldar's laboratory but was provided to an outside company, which later came into Notre Dame's possession. [DE 83 at 2]. The document's creation and external distribution to third parties undermines claims that it was intended to be treated confidentially.

Even if the threshold confidentiality requirement was satisfied, Defendants have failed to identify which specific provision of the Protective Order applies to the SAM.gov application. Defendants vaguely reference Section II(A)(7) that the SAM.gov application might fall under, but do not elaborate how the disclosure would harm Notre Dame's business or research interests. [DE 82 at 8-9].

Since the SAM.gov application concerns the appointment of an entity administrator, it could be classified as a third-party personnel record. [DE 82 at 8]. Thus, under the proper interpretation of Section II(A)(5), only portions of documents "concerning the identity and personal information" of specified non-party individuals are confidential. The remainder of the document such as administrative details should remain publicly accessible.

However, on account of the law of the case doctrine, as addressed *infra*, the Court declines to direct the parties to file a redacted version of the 2024 application for a SAM.gov account [DE 25-3].

### E.  Effect of Earlier Decisions Regarding Confidentiality

The parties mention, but do not deeply discuss the effect the Court's earlier sealing orders have at this stage of the litigation.

Orders on motions to seal are interlocutory orders. *Herron v. Tears of Eden*, No. 1:23-cv-01190-RLY-MJD, 2024 WL 6883862, at *2 n. 1 (S.D. Ind. Feb. 6, 2024). Therefore, the Court's earlier orders are reviewed under Federal Rule of Civil Procedure 54(b). Under Rule 54(b), the Court has the inherent power to reconsider non-final orders before "the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); *Peterson v. Linder*, 765 F.2d 698, 704 (7th Cir. 1985); *Galvan v. Norberg*, 678 F.3d 581, 586-87 (7th Cir. 2012) (citing *Marconi Wireless Tel. Co. v. United States,* 320 U.S. 1, 47 (1943)). It is appropriate for the Court to do so only where that previous order shows that "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F. 2d 1185, 1191 (7th Cir. 1990) (quoting *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983)). Another basis for reconsideration would be a controlling or significant change in the law or facts since the submission of the issue to the Court. *Id.*

Here, the parties have not brought forward substantive arguments on why the Court's earlier orders should be reconsidered, and the law of the case doctrine offers significant support that the prior orders should not be reconsidered.

"[L]aw of the case is an amorphous concept. As most commonly defined, the doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983); *Pepper v. U.S.*, 562 U.S. 476, 506 (2011). The doctrine is well-settled and serves to discourage a later judge from reconsidering earlier decisions already made by the prior judge. *Gilbert v. Illinois State Bd. Of Educ.*, 591 F.3d 896, 902 (7th Cir. 2010). The doctrine is however, ultimately "discretionary and does not preclude a district court from reopening a decided issue." *Galvan v. Norberg*, 678 F.3d 581, 587 (7th Cir. 2012).

Generally, one federal district judge should not overrule a decision or order of another federal district judge in the same case. *Bowles v. Wilke*, 175 F.2d 35, 37 (7th Cir. 1949). The later judge should depart from the earlier judge's decision only "if he has a conviction at once strong and reasonable that the earlier ruling was wrong, and if rescinding it would not cause undue harm to the party that had benefitted from it." *HK Systems, Inc. v. Eaton Corp.*, 553 F.3d 1086, 1089 (7th Cir. 2009) (quoting *Avitia v. Metropolitan Club of Chicago, Inc.*, 49 F.3d 1219, 1227 (7th Cir. 1995)).

The Court does not have a strong and reasonable conviction that the earlier rulings sealing these documents were wrong. First, the Court ordered certain documents to be filed under seal during the motion hearing held on October 28, 2024,

regarding Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction. [DE 24]. Those documents are the OIE investigation report [DE 25-1], the March 15, 2023, faculty grievance panel report [DE 25-2], and the 2024 application for a SAM.gov account [DE 25-3]. These documents had a substantial impact on the order the Court later entered denying Plaintiff's emergency request for a temporary restraining order and preliminary injunction. [*See* DE 30]. The Court's order on Plaintiff's motion for reconsideration also touched on these documents. [*See* DE 84]. The Court's decision to deny this relief is substantial and shows that the documents should remained sealed, since they have already been sealed when the Court made its decisions concerning the request for a temporary restraining order and preliminary injunction in this litigation. See *Baxter Intern., Inc. v. Abbott Laboratories*, 297 F.3d 544, 546 (7th Cir. 2002). The Court chose not to unseal these documents then, and it is not appropriate to disturb that decision now when this case is at the discovery stage of litigation.

The same rationale applies to the documents filed under seal by Defendants on March 3, 2025 [DE 58], which occurred after the Court entered the protective order [DE 47]. Concurrently with filing these documents, Defendants moved to have an unredacted sur-reply filed under seal. [DE 59]. The Court, when granting Defendants' motion, stated that the Defendants demonstrated good cause to maintain portions of the sur-reply under seal. [DE 63 at 2]. These documents, specifically the January 31, 2025, faculty grievance panel's report [DE 56-1], the panel's recommendations that were provided to Plaintiff [DE 56-2], and the University President's February 17, 2025, letter

to Plaintiff regarding the outcome of Plaintiff's 2024 faculty grievance [DE 56-3] are to remain under seal now as well.

**IV.   CONCLUSION**

Accordingly, Plaintiff's Motion for Interpretation of Protective Order, to Redesignate Documents, and to File Public Versions of Sealed Documents is **GRANTED in PART**. [DE 76]. Plaintiff is granted leave to file redacted exhibits in place of [DE 72-3] and [DE 72-4] in accordance with this order. The Clerk is **DIRECTED** to retain the following documents under seal: [DE 25-1 through DE 25-3, DE 56-1 through 56-3];

**SO ORDERED** this 27th day of January 2026.

s/Scott J. Frankel
Scott J. Frankel
United States Magistrate Judge

24